**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**XIOTECH CORPORATION,**

                            **Plaintiff,**

        **vs.**                                                    **6:13-CV-861**
                                                                   **(MAD/TWD)**

**EXPRESS DATA PRODUCTS CORPORATION,**
**ESI, LLC, and RUDY C. D'AMICO,**

                            **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

PINNISI & ANDERSON                    Michael D. Pinnisi, Esq.
520 Cayuga Heights Road
Ithaca, New York 14850
_Attorneys for Plaintiff_

EDWARD J. FINTEL & ASSOCIATES          Edward J. Fintel, Esq.
120 Walton Street, Suite 203
P.O. Box 6451
Syracuse, New York 13217
_Attorneys for Defendants_

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Plaintiff Xiotech Corporation ("plaintiff" or "Xiotech") commenced the within action

against defendants for damages as a result of breach of contract, fraud and unjust enrichment.

According to the complaint, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Presently before the Court is plaintiff's motion for a preliminary injunction pursuant to Fed. R.

Civ. P. 65.  (Dkt. No. 5).  Defendants have opposed the motion. (Dkt. Nos. 13, 15).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

Xiotech is a seller of computer equipment. Prior to June 2013, Express Data Products

Corporation ("EDP") and ESI, LLC ("ESI") were in the business of computer sales and provided

networking services.[2] Rudy D'Amico is the sole director, officer and shareholder of EDP and

sole member and manager of ESI. EDP was located at 3899 Oneida Street in New Hartford, New

York and ESI operated from 6035 Corporate Drive in East Syracuse, New York. On or about

February 16, 2006, Xiotech and ESI executed a contract entitled Domestic Nonexclusive

Preferred Reseller Agreement ("Reseller Agreement").[3] Pursuant to the Reseller Agreement, ESI

would act as a reseller of Xiotech goods. From the date of the agreement through May 2013, ESI

submitted Purchase Orders to Xiotech. Xiotech delivered complete and conforming goods in

response to the ESI Purchase Orders, and ESI accepted delivery without objection. Xiotech

invoiced ESI for each delivery made pursuant to an ESI Purchase Orders, and ESI delivered

payment in full of all invoiced amounts through March 2013.

From April 2013 through May 2013, ESI delivered eight Purchase Orders to Xiotech for

goods totaling $552,822.01. Xiotech claims that it "delivered the goods and ESI accepted the

delivery without objection". Defendants maintain that the goods were delivered to "end users",

not to defendants and thus, defendants were never in possession of said goods. The end users

were: Oneida County Central Services, First Source Federal and Argus Information and Advisory

---

[1] The facts are taken from the complaint, affidavits and exhibits submitted by the parties. These are not findings of fact by the Court and are only presumed true for the purposes of the within motion.

[2] Defendants claim that these entities operated from different locations and maintained separate financial records. According to the complaint, Express Data operated at times under the names "Express Systems Integration" and "ESI".

[3] Defendants contend that EDP entered into the Reseller Agreement with plaintiff. However, the Agreement, which is part of the record herein, contains David Taurisano's signature on behalf of ESI. ESI's address is listed, in the Agreement, as 3899 Oneida Street, New Hartford, New York.

Services LLC.   According to defendants, from May 2, 2013 through July 17, 2013, three separate

payments were received from the end users and deposited into an account at NBT Bank (Acct.

No. 5673050052).  The following amounts were deposited into that account:  $27,256.92;

$567,813.41 and $1,774.60.[4]

According to plaintiff's complaint, the following amounts remain due under the

corresponding invoice numbers:

> 04/09/2013 - INV000271670 - $71,590.60
> 04/12/2013 - INV000271713 - $23,055.00
> 04/30/2013 - INV000272060 - $1,400.04
> 05/03/2013 - INV000272107 - $98,486.98
> 05/03/2013 - INV000272108 - $147,661.47
> 05/03/2013 - INV000272109 - $98,486.98
> 05/10/2013 - INV000272223 - $111,040.18
> 05/28/2013 - INV000272464 - $437.52

The total, undisputed amount due is $551,167.77 excluding late fees and costs.  In May

and June 2013 Xiotech requested payment from ESI.[5]  ESI failed to respond to those requests.

Plaintiff claims that in June 2013, D'Amico represented to Xiotech that ESI was insolvent and

was ceasing business.  On June 26, 2013, Edward F. Welch ("Welch"), Chief Financial Officer

for Xiotech, notified ESI and D'Amico, by letter, that Xiotech was terminating the Reseller

Agreement.   The letter also contained the following paragraph:

> Express Systems Integration currently owes Xiotech $551,167.77 in
> past due invoices.   Copies of the invoices and supporting
> documentation are encloses [sic] herewith.  Payment is due on these
> invoices immediately.  If the invoices are not paid promptly Xiotech
> will take legal action to recover the amounts due to Xiotech under the
> agreement.

---

[4] Defendants assert that ESI was the owner of bank account 7000933443 and that the balance in said account, as of July 31, 2013, was <$355.46>.  Defendants further contend that NBT "recently closed this account".

[5] The record herein does not contain any documentation with respect to these requests.

On July 13, 2013, Welch received a letter from ESI's counsel indicating that ESI ceased operations as of June 10, 2013. The letter further stated:

> ESI's secured lender, NBO Bank, has security interests in all the assets of the company as collateral for its various working capital loans and lines of credit. NBT has received proceeds of its collateral in sufficient amounts to satisfy the liabilities owed to it and ESI expects that NBT will release its security interests shortly. ESI continues to collect receivables and is seeking a purchaser for its remaining assets. After this orderly liquidation, it is the company's intention to pay its creditors on a proportional basis.
>
> The company hopes to collect all amounts owing to it within the next sixty (60) days.
>
> In the event ESI is forced into litigation by any of its creditors, the company will likely be forced to file for bankruptcy. This will only serve to dissipate the recovered funds in order to pay bankruptcy professionals, the trustee, and the estate.

On July 19, 2013, plaintiff filed the complaint in the within action. On July 25, 2013, plaintiff filed a motion for a preliminary injunction and temporary restraining order. (Dkt. No. 5). On July 26, 2013, the Court issued an expedited briefing schedule on plaintiff's motion for a preliminary injunction and issued a temporary restraining order. On August 1, 2013, plaintiff moved to modify the temporary restraining order based upon newly discovered information. On August 2, 2013, the Court granted plaintiff's motion to modify the temporary restraining order. The Court now addresses the merits of plaintiff's motion for a preliminary injunction.

## DISCUSSION

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc*., 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted). Furthermore, "[a] decision to grant or deny a preliminary injunction is committed to the discretion of the district court." *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994) (citation

4

omitted).  "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the . . . merits.'" *Candelaria v. Baker*, 2006 WL 618576, at \*3 (W.D.N.Y. 2006) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam)).  However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury."  *Schuh v. Michigan Dep't of Corr.*, 2011 WL 7139457, at \*3 (W.D.Mich. 2011) (citing *Stenberg v. Cheker Oil Company*, 573 F.2d 921, 925 (6th Cir.1978) (internal citations omitted)).  The purpose of a preliminary injunction is to preserve "the court's power to render a meaningful decision after a trial on the merits," not to provide the movant with ultimate relief.  *Warner Vision Entm't. Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261–62 (2d Cir.  1996).

In considering whether to enter a preliminary injunction under Rule 65, federal courts in this Circuit engage in an analysis of plaintiff's claims and potential harm.  Plaintiff must demonstrate that it is likely to suffer irreparable injury in the absence of an injunction.  *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010). Unless a federal statute specifically authorizes a "departure from the long tradition of equity practice," the court may not presume that the plaintiff will suffer irreparable harm.  *Id*. at 80 (citation omitted).  The Court must also analyze whether plaintiff has demonstrated "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation."  A preliminary injunction may be entered only if the court concludes that the balance of hardships between the plaintiff and the defendant "tips in the plaintiff's favor."  *Id*.

5

Upon receipt of submissions from the parties, the Court has determined that oral argument is not necessary. The Court will resolve the motion on the submissions. *See Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997).

## I.     IRREPARABLE HARM

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 934 F.2d 30, 34 (2d Cir. 1991) (citations and internal quotation marks omitted). An applicant for a preliminary injunction "must show that it is likely to suffer irreparable harm if equitable relief is denied." *Id.* (citation omitted). A mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction. *Id.* "As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." *Brenntag Int'l Chem. Inc. v. Bank of India*, 175 F.3d 245, 249 (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam)). The Second Circuit has held that an exception exists to this general rule and that the finding of irreparable harm may lie in connection with an action for money damages where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency. *CRP/Extell Parcel I, L.P. v. Cuomo,* 394 F. App'x 779, 781-782 (2d Cir. 2010) (citations omitted). "[T]he exception to the general rule is rooted in the fact that insolvency may render otherwise compensable harm irreparable because 'there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied' ". *Id.* (citing *Brenntag*, 175 F.3d at 249–50). To be entitled to relief under this exception, a movant must show that the risk of insolvency is likely and imminent. *Id.* (citations

omitted). "[M]onetary loss may support a finding of irreparable harm 'in situations where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy [ ] or is in a perilous financial state'". *WestLB AG v. BAC Fla. Bank*, 2012 WL 3135825, at *5 (S.D.N.Y. 2012) (internal quotation marks and citation omitted); *see also Centauri Shipping Ltd. v W. Bulk Carriers KS*, 528 F.Supp.2d 186, 194 (S.D.N.Y. 2007) ("[M]onetary injury may suffice to establish irreparable harm in situations 'where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy, or is in a perilous financial state.' ")

In this matter, plaintiff argues that defendants' admissions and submissions prove an inability to satisfy a judgment and thus, establishes the requisite irreparable harm. Defendants question the authority of the *Brenntag* holding and argue that the insolvency exception does not exist. In the alternative, defendants claim that plaintiff has not demonstrated that defendants' insolvency is "likely and imminent". In the Memorandum of Law in opposition to the motion, defendants claim that they "have significant accounts receivable due and owing and still have hard assets to sell to satisfy the claims of creditors".

The Court rejects defendants' arguments with respect to the precedent set by *Brenntag*. Indeed, the Second Circuit has reiterated and applied the *Brenntag* holding in several cases. *See CRP/Extell Parcel I, L.P.*, 394 F. App'x at 781 ("we have held that a finding of irreparable harm may lie in connection with an action for money damages where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency"). Based upon the record herein, plaintiff has demonstrated that defendants are in a "perilous financial state" and if they are not currently insolvent, they may be in the near future. While defendants argue that plaintiff's have not shown that insolvency is "imminent", defense counsel's July 2013 letter belies that fact. In

that correspondence, counsel indicated that "bankruptcy" was "likely" if litigation was commenced.   Moreover, while counsel asserts that there are receivables due, no affidavits or proof to support that conclusory assertion.  There is nothing in the record to suggest that defendants will be able to pay any future award or that plaintiff will be able to collect on a judgment.  In addition, while defendants may not currently be insolvent and may become profitable in the future, that does not change the "the seriousness of the current situation".  *See Castle Creek Tech. Partners, LLC v. CellPoint Inc.*, 2002 WL 31958696, at \*4 (S.D.N.Y. 2002).  Based upon the record, plaintiff has demonstrate irreparable harm.  *See Seide v. Crest Color, Inc.*, 835 F.Supp. 732, 735 (S.D.N.Y. 1993) (granting a preliminary injunction preventing defendant from selling assets where the plaintiff likely would be unable to collect on a judgment against defendant if assets were sold).

## II.    LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff's complaint sets forth three causes of action: (1) breach of contract; (2) unjust enrichment; and (3) fraud.

## A.    Breach of Contract

To recover on a breach of contract claim under Minnesota law[6], plaintiff must prove, (1) the formation of a contract; (2) the performance of conditions precedent; and (3) the breach of the contract.  *Tarek ibn Ziyad Acad. v. Islamic Relief USA,* 794 F.Supp.2d 1044, 1058 (D.Minn. 2011) (citing *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn.Ct.App. 2008)).  In support of this motion, plaintiff provided a copy of the Reseller Agreement, Purchase Orders, and invoices for shipped goods that were delivered to defendants.  Conversely, defendants do not dispute that a valid contract exists nor do they contend that they

---

[6] Pursuant to the contract, Minnesota law governs any dispute.

did not breach that agreement. Accordingly, plaintiff has demonstrated a likelihood of success on the merits of this claim. *See PCS Wireless LLC v. A to Z Wireless Solutions Inc*., 841 F.Supp.2d 649, 653 (E.D.N.Y. 2012).

## B.    Unjust Enrichment

Defendants argue that plaintiff cannot maintain a claim for unjust enrichment because the parties entered into a contract governing the subject matter. Plaintiff argues that the contract was with EDP only and therefore, D'Amico and ESI were unjustly enriched.[7] To assert a viable claim for unjust enrichment under New York law, a claimant must allege facts establishing: "(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations omitted). If plaintiff prevails on the breach of contract claim, or if defendants admit that a valid contract exists, plaintiff cannot prevail on this claim. *PCS Wireless LLC v.*, 841 F.Supp.2d at 653 (the arguments from the breach of contract claim will likely be similar to the arguments advanced on the unjust enrichment claim). Here, if plaintiff loses on the argument of a valid contract, it will be likely to prevail on a claim of unjust enrichment because ESI received a shipment from plaintiff for which it did not pay and which it did not return to plaintiff. *See id.*

## C.    Fraud

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements

---

[7] Plaintiff argues that EDP was the only party to the contract. Therefore, the Court finds no merit in plaintiff's argument that, pursuant to the contract, Minnesota Law applies to the unjust enrichment claims against ESI and D'Amico.

that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). However, because the court "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations,' ... plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc*., 47 F.3d 47, 52 (2d Cir.1995) (internal citation omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted).

Where a plaintiff pleads both a fraud claim and a breach of contract claim, the plaintiff must distinguish the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages. ." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc*., 98 F.3d 13, 19 (2d Cir.1996) (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995)). Allegations that are, "merely a restatement, albeit in slightly different language, of the [ ] contractual obligations asserted in the cause of action for breach of contract does not transform the claim into a tort claim". *Clark–Fitzpatrick, Inc. v. Long Island R.*

*Co.*, 70 N.Y.2d 382, 390 (1987) (citing *Deerfield Commc'ns Corp. v. Chesebrough–Ponds, Inc.*,

68 N.Y.2d 954 (1986) (fraud claim held to be dressed-up version of contract cause of action)).

With respect to fraud, the complaint contains the following allegations, *inter alia*:

> During April and May 2013 ESI delivered Purchase Orders numbered 73862, 73870, 73921, 73932, 73933, 73952, 73989 to Xiotech for delivery of the goods stated therein; said Purchase Orders are referred to herein as the "Fraudulent Purchase Orders."
>
> Upon information and belief, defendants knew that ESI would be unable to pay Xiotech for the goods that are reflected in the Unpaid Invoices at the time ESI delivered the Fraudulent Purchase Orders to Xiotech.
>
> Upon information and belief, defendants knew that ESI did not intend to pay Xiotech for the goods that are reflected in the Unpaid Invoices at the time ESI delivered the Fraudulent Purchase Orders to Xiotech, regardless of its actual ability to pay.
>
> Upon information and belief, D'Amico and ESI affirmatively misrepresented the financial condition of ESI at and about the time it delivered the Fraudulent Purchase Orders, in order to induce Xiotech to deliver goods in response to them.
>
> Upon information and belief, D'Amico and ESI intentionally withheld material information regarding the financial condition of ESI from Xiotech at and about the time it delivered the Fraudulent Purchase Orders, in order to induce Xiotech to deliver goods in response to them.

Pltf. Compl. at ¶ 21, 37-39, 41-42.

Plaintiff also contends that D'Amico made false representations that included affirmative

misstatements of material fact and further, that, "D'Amico knew that his representations to

Xiotech regarding ESI's intention to pay for the goods ordered in the Fraudulent Purchase Orders

were false". *Id*. at ¶ 58-59,  65.

Despite these allegations, plaintiff fails to meet the heightened pleading standard for fraud

and fails to demonstrate a likelihood of success on the merits. While the complaint contains

11

details of the alleged non-payment and representations regarding insolvency, it does not contain any specific facts regarding defendants' alleged intent to defraud plaintiff. Moreover, plaintiff has not sufficiently plead the fraud claim to distinguish that cause of action from the breach of contract claim. Plaintiff's conclusory assertions are insufficient to warrant the relief requested, on this basis.

## III. BALANCE OF EQUITIES

Defendants assert that they have "legitimate and ordinary" business expenses that must be paid from the NBT Bank account. Defendants list expenses including rent; gas and electric; phone, internet, network; security; and trash removal. However, defendants failed to submit any supporting documentation to establish these alleged expenses or confirm the outstanding amounts. While defendants would undoubtedly suffer some harm if the Court awards the relief requested, based on the allegations in the complaint and facts before the Court at this time, defendants are responsible for any harm that may arise based upon defendants' failure to remit payment for goods received pursuant to the Reseller Agreement. *See Golden Krust Patties, Inc. v. Bullock*, 2013 WL 3766551, at \*12 (E.D.N.Y. 2013) ("[i]n such circumstances, the Court cannot say the harm to defendants outweighs the harm to plaintiffs) (citing *Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC*., 468 F. App'x 43, 45 (2d Cir. 2012) (where "[a]ny hardship defendants would suffer from an injunction would stem from their own breaches of the Agreement and the Non–Competition Agreement," the balance of hardships weighed in favor of an injunction)).

## IV. BOND

A court may "issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c).

The Second Circuit has held that "where the enjoined party has shown no likelihood of harm, the Court may properly dispense with a bond." *Am. ORT, Inc. v. ORT Israel,* 2009 WL 233950, at *4 (S.D.N.Y. 2009) (citing *Doctor's Assocs. Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)). "It is well settled that '[i]n fixing the amount of security required, a court is not required to order security in respect of claimed economic damages that are no more than speculative'". *Id.* (citing *Int'l Equity Inv., Inc. v. Opportunity Equity Partners, Ltd.*, 441 F.Supp.2d 552, 566 (S.D.N.Y. 2006)). "[T]he burden is on the party seeking security to establish a rational basis for the amount of the proposed bond." *Id.* (citations omitted).

Here, defendants have not moved for bond and have provided no evidence to warrant the imposition of any bond. Accordingly, at this time, the Court declines to issue an order with respect to bond. *See Marsh USA Inc. v. Karasaki,* 2008 WL 4778239, at *21 (S.D.N.Y. 2008) (because the defendant did not make a request for a bond, the plaintiff is entitled to a preliminary injunction without having to post a bond) (citing *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976)).

## V.    PROPOSED ORDER

Plaintiff submitted a new "proposed order" with the Reply Memorandum of Law.  This is the third such Order submitted by plaintiff in support of the preliminary injunction.  The Court has reviewed the submission and finds that it contains additional language that was not previously included in plaintiff's original submissions.  The Court will not accept new arguments, raised for the first time in reply papers. *See Shanks v. Vill. of Catskill Bd. of Tr.*, 653 F.Supp.2d 158, 165 n.6 (N.D.N.Y. 2009) (because "it is inappropriate to consider new arguments in a reply brief . . . the court does not consider this argument").   More importantly, the new proposed order contains restrictions and limitations that were not previously requested or ordered by this Court in the

temporary restraining order.  Simply put, plaintiff is attempting to expand the scope of the

temporary restraining order without a proper evidentiary foundation.  The Court will not issue

such a broad, sweeping injunction at this time.

**CONCLUSION**

**IT IS HEREBY**

**ORDERED**, that plaintiff's motion for a preliminary injunction (Dkt. No. 5) is

**GRANTED**; it is further

**ORDERED** that the temporary restraining order is extended pending the resolution of this

matter or further Order by this Court.

**IT IS SO ORDERED.**

Dated:  August 14, 2013
        Albany, New York

Mae A. D'Agostino
U.S. District Judge