**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**XIOTECH CORPORATION,**

                                    **Plaintiff,**

        **vs.**                                         **6:13-CV-861**
                                                        **(MAD/TWD)**

**EXPRESS DATA PRODUCTS CORPORATION,**
**ESI, LLC, and RUDY C. D'AMICO,**

                                    **Defendants.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**PINNISI & ANDERSON**                   **MICHAEL D. PINNISI, ESQ**.
520 Cayuga Heights Road
Ithaca, New York 14850
Attorneys for Plaintiff

**EDWARD J. FINTEL & ASSOCIATES**        **EDWARD J. FINTEL, ESQ.**
120 Walton Street, Suite 203
P.O. Box 6451
Syracuse, New York 13217
Attorneys for Defendants Express Data
Products Corporation and ESI, LLC

**HISCOCK & BARCLAY LLP**                **ROBERT A. BARRER, ESQ.**
One Park Place
300 South State Street
Syracuse, New York 13202
Attorneys for Defendant Rudy C. D'Amico

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiff Xiotech Corporation commenced this diversity action against Defendants on July

19, 2013, alleging causes of action for breach of contract, fraud, and unjust enrichment. *See*

Complaint, Dkt. No. 1 ("Compl.").  On July 25, 2013, Plaintiff filed a motion for a preliminary

injunction and temporary restraining order by order to show cause. *See* Dkt. No. 5. On July 26, 2013, the Court issued an expedited briefing schedule on Plaintiff's motion for a preliminary injunction and issued a temporary restraining order. *See* Dkt. No. 6. On August 1, 2013, Plaintiff moved to modify the temporary restraining order based upon newly discovered information. *See* Dkt. No. 9. Thereafter, on August 2, 2013, the Court granted Plaintiff's motion to modify the temporary restraining order. *See* Dkt. No. 12. On August 14, 2013, the Court granted Plaintiff's motion for a preliminary injunction and extended the temporary restraining order pending resolution of this matter. *See* Dkt. No. 19.

Presently before the Court are Defendant Rudy C. D'Amico's motion to dismiss, *see* Dkt. No. 10, Defendants Express Data Product Corporation's ("EDP") and ESI, LLC's motion to dismiss, *see* Dkt. No. 20, and Plaintiff's unopposed motion for partial summary judgment, *see* Dkt. No. 21.

## II. BACKGROUND

The Court assumes the parties' familiarity with the background of this case, as detailed in the Court's prior rulings, and will only discuss here those allegations and facts relevant to disposition of the pending motions.

### A.    The Complaint[1]

Plaintiff Xiotech is a supplier of sophisticated computer data storage equipment. Compl. ¶ 1. Defendants contracted with Plaintiff to be retail resellers of those products. *Id.* During the time period relevant to this dispute, Defendant D'Amico owned a controlling interest in both EDP

---

[1] These allegations are presumed to be true only for the purposes of the motions to dismiss, and do not constitute findings of fact by the Court.

and ESI, LLC.[2]  *Id.* ¶ 10.  Both Defendants EDP and ESI, LLC operated under the trade names "Express Systems Integration," "ESI," and "Express Systems Integration (ESI);" ESI, LLC is the alter ego of EDP.  *Id.* ¶¶ 5-7.

On or about February 16, 2006, Xiotech entered into a contract with EDP and ESI, LLC entitled Domestic Nonexclusive Preferred Reseller Agreement ("Reseller Agreement").[3]  *Id.* ¶ 13. The Reseller Agreement, which is interpreted in accordance with the Minnesota law, sets forth the terms by which Xiotech could sell goods to EDP and ESI, LLC for resale to their customers. *Id.* ¶¶ 15-16.

For several years following execution of the Reseller Agreement, between February 2006 and May 2013, Defendants submitted purchase orders for certain equipment from Xiotech.  *Id.* ¶¶ 1, 17.  Pursuant to the Reseller Agreement, Xiotech delivered goods to EDP and ESI, LLC, as set

---

[2]  The Complaint defines ESI, LLC and EDP collectively as "ESI," on the basis of alter ego and joint ownership theories.  Since the Court will not determine at this stage of the litigation whether Plaintiff has satisfied the criteria for such treatment, the Court will separately identify EDP and ESI, LLC in each instance where the Complaint refers to them collectively as "ESI."

[3]  The Complaint states that the Reseller Agreement is attached thereto as Exhibit A, but the Complaint was filed with no such exhibit.  The Reseller Agreement was attached to Plaintiff's motion for a preliminary injunction, *see* Dkt. No. 5-3, and is part of the record currently before the Court in support of Plaintiff's motion for partial summary judgment, *see* Dkt. No. 21-5. "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint, and that document is thus integral to the complaint, [the Court] may consider its contents even if it is not formally incorporated by reference."  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (alteration and internal quotation marks omitted).  "Indeed, where the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim."  *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 407 (S.D.N.Y. 2011) (internal quotation marks omitted); *see also Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 201 (S.D.N.Y. 2008) ("The unsigned Operating Agreement . . . is also within the scope of the Court's review on this motion to dismiss because it is incorporated into the Counterclaims by reference or through [defendants'] reliance in making their allegations."); *Assoko v. City of New York*, 539 F. Supp. 2d 728, 732 n.1 (S.D.N.Y. 2008) (considering purchase agreements in motion to dismiss, even though they were not attached to the complaint, because plaintiffs relied on the agreements in several causes of action).  Thus, the Court may consider this document in deciding the instant motions.

forth in the submitted purchase orders, through June 2013.  *Id.* ¶ 18.  Xiotech invoiced EDP and

ESI, LLC for each delivery made pursuant to a purchase order, and received payment on those

invoices through March 2013.  *Id.* ¶ 19.

In April and May of 2013, EDP and ESI, LLC submitted seven purchase orders to Xiotech

for delivery of certain goods (the "Purchase Orders").  *Id.* ¶ 21.  Thereafter, Xiotech made timely

and conforming delivery of all goods listed in the Purchase Orders.  *Id.* ¶ 22.  Xiotech then

invoiced EDP and ESI, LLC for the goods delivered pursuant to the Purchase Orders (the

"Invoices").  *Id.* ¶ 23.  The Invoices were not paid in full, and the amount owed Xiotech pursuant

to the Invoices is $551,167.77, plus late fees.  *Id.* ¶¶ 24-28.  In May and June of 2013, Xiotech

requested payment on the Invoices pursuant to the Reseller Agreement.  After initially receiving

no response, Defendant D'Amico represented in June 2013, "in part and substance, that [EDP and

ESI, LLC] w[ere] insolvent and w[ere] ceasing business."  *Id.* ¶¶ 30-32.  Xiotech then terminated

the Reseller Agreement by letter dated June 26, 2013.  *Id.* ¶ 33.

"By reselling the goods without paying for them, Defendants kept as unlawful profit the

full retail value of the goods."  *Id.* ¶ 1.  Xiotech alleges that Defendants fraudulently induced it

into supplying the goods at issue with misrepresentations regarding Defendants' ability and

intention to pay for them.  *Id.*  At no time prior to their receipt of the goods purchased pursuant to

the Purchase Orders, did Defendants indicate or represent that EDP and ESI, LLC were insolvent,

at risk of insolvency, or unable to pay for the goods.  *Id.* ¶¶ 34-36.  Xiotech alleges, upon

information and belief, that:  Defendants knew EDP and ESI, LLC would be unable and did not

intend to pay for the goods when the Purchase Orders were submitted, *id.* ¶¶ 37-38; D'Amico

caused EDP and ESI, LLC to issue the Purchase Orders in order to "net hundreds of thousands of

dollars by reselling Xiotech products without paying Xiotech for them," *id.* ¶ 40; Defendants

affirmatively misrepresented the financial condition of EDP and ESI, LLC around the time the Purchase Orders were issued in order in induce Xiotech to deliver the goods, *id.* ¶ 41; Defendants intentionally withheld material information regarding the financial condition of EDP and ESI, LLC around the time the Purchase Orders were issued, *id.* ¶ 42; and D'Amico personally enriched himself by causing EDP and ESI, LLC to conduct business in this manner, *id.* ¶ 43.

In its first claim for relief for breach of contract, Xiotech alleges that EDP and ESI, LLC failed to make payments to it under the Reseller Agreement and are therefore liable for the unpaid amount of the Invoices, plus late fees and other expenses. Xiotech does not allege that Defendant D'Amico was a party to the Reseller Agreement, that Defendant D'Amico breached the Reseller Agreement, or that Defendant D'Amico is liable to Xiotech for breach of contract. *Id.* ¶¶ 45-50.

Xiotech alleges in its second claim for fraud that Defendants made material misrepresentations and omissions, which Xiotech reasonably relied upon, and Xiotech thereby suffered damages. Such damages include, without limitation, the unpaid amount of the Invoices, plus late fees and other expenses. Xiotech also seeks punitive damages for Defendants' fraudulent conduct. *Id.* ¶¶ 51-71.

As to Xiotech's third claim for relief for unjust enrichment, Xiotech alleges that ESI, LLC and EDP received goods pursuant to the Purchase Orders and have not paid for those goods. Xiotech further alleges that it would be unjust for EDP and ESI, LLC to retain those goods, or any proceeds derived from the sale of those goods. Xiotech also alleges that D'Amico should be caused to return any goods in his possession and to disgorge all proceeds obtained from the sale of those goods. *Id.* ¶¶ 72-79.

**B.     Undisputed Facts**[4]

Xiotech is a corporation organized and in good standing under the laws of the State of

Minnesota that conducts business as a distributor of computer equipment.  Statement of Material

Facts of Xiotech Corporation in Support of its Motion for Partial Summary Judgment re Breach of

Contract, Dkt. No. 21-1 ("Xiotech SOMF") ¶ 1.  EDP is a corporation organized under the laws of

the State of New York, which sometimes operated under the name "ESI Express Systems

Integration."  *Id.* ¶ 2.  On or about February 16, 2006 Xiotech and EDT entered into the Reseller

Agreement.  *Id.* ¶ 3; *see also* Dkt. No. 21-5.

Pursuant to the Reseller Agreement, EDP delivered the following Purchase Orders to

Xiotech for delivery of the goods:

| P.O. Number | P.O. Date | P.O. Amount |
|-------------|-----------|-------------|
| 73862 | 04/04/2013 | $71,590.60 |
| 73870 | 04/05/2013 | $23,733.24 |
| 73921 | 04/30/2013 | $1,400.04 |
| 73932 | 05/02/2013 | $98,486.98 |
| 73933 | 05/02/2013 | $98,486.98 |
| 73934 | 05/02/2013 | $147,661.47 |
| 73952 | 05/08/2013 | $111,040.18 |
| 73989 | 05/28/2013 | $422.52 |

*Id.* ¶ 4.

---

[4] The following undisputed facts are derived from Plaintiff's Local Rule 7.1(a)(3) statement of material facts.  *See* Dkt. No. 21-1.  Defendant EDP does not oppose Plaintiff's motion for summary judgment.  *See* Dkt. No. 25.  Thus, any properly supported facts in Plaintiff's Statement of Material Facts are deemed admitted.  *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (per curiam) (accepting as true material facts contained in unopposed local rule statement of material facts); *Betlewicz v. Division of New York State Police*, No. 1:12–cv–1158, 2014 WL 859247, *1 n.2 (N.D.N.Y. Mar. 5, 2014); Local Rule 7.1(a)(3).  However, "[c]onclusions of law in a Local Rule 7.1 Statement, even when unopposed, are not deemed admitted."  *Krause v. CSX Transp.*, No. 1:11-CV-0098, 2013 WL 6163990, *1 n.1 (N.D.N.Y. Nov. 20, 2013).

Xiotech accepted the Purchase Orders, and made timely and conforming delivery of all goods contracted for.  *Id.* ¶¶ 5-6.  EDP received payments totaling $596,844.93 from its customers for the goods Xiotech shipped pursuant to the Purchase Orders.  *Id.* ¶ 8.  Thereafter, Xiotech delivered the following Invoices to Express Data for the goods it delivered pursuant to the Purchase Orders:

| Invoice Number | Invoice Date | Invoice Amount |
| --- | --- | --- |
| INV 000 271670 | 04/09/2013 | $71,590.60 |
| INV 000 271713 | 04/12/2013 | $23,055.00 |
| INV 000 272060 | 04/30/2013 | $1,400.04 |
| INV 000 272107 | 05/03/2013 | $98,486.98 |
| INV 000 272108 | 05/03/2013 | $147,661.47 |
| INV 000 272109 | 05/03/2013 | $98,486.98 |
| INV 000 272223 | 05/10/2013 | $111,040.18 |
| INV 000 272464 | 05/28/2013 | $437.52 |

*Id.* ¶ 9.

Pursuant to the Reseller Agreement, EDP was obligated to pay the full amount of the Invoices within 30 days of their receipt.  *Id.* ¶ 11; *see also* Reseller Agreement ¶ 12.A ("Reseller's payment obligations are as stated on Xiotech's invoices and Reseller agrees to pay the full invoiced amount, without setoff or deduction, within the time period stated on such invoice.")  EDP delivered a partial payment of $991.00 against INV 000 271713, but did not deliver any other payments against the Invoices.  *Id.* ¶ 12-13.

On June 26, 2013, effective that day, Xiotech terminated the Reseller Agreement.  *Id.* ¶ 14.  All money due to Xiotech by EDP became due and payable immediately upon the effective date of the termination pursuant to the Reseller Agreement.  *Id.* ¶ 15; *see also* Reseller Agreement ¶ 9(i) ("any money due Xiotech by Reseller shall become payable immediately upon the effective date of termination or cancellation").  EDP delivered notice to Xiotech that it did not intend to provide payment in full to Xiotech by letter dated July 15, 2013.  *Id.* ¶ 16.

EDP owes $551,167.77 to Xiotech for the principal amount due pursuant to the Invoices, excluding late fees and costs. *Id.* ¶¶ 20-22.

## III. DISCUSSION

**A.     Defendants' motions to dismiss**

### 1.     *Legal Standard*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings without considering the substantive merits of the case. *See Global Network Commc'ns v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006); *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself" unless all parties are given a reasonable opportunity to submit extrinsic evidence. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein." *Robinson v. Town of Kent*, No. 11 Civ. 2875, 2012 WL 3024766, *4 (S.D.N.Y. July 24, 2012) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient facts "to sho[w] that the pleader is entitled to relief[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555, and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

In considering a motion to dismiss, the Court may consider documents attached as an exhibit thereto or incorporated by reference, documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted). To incorporate a document by reference, "the Complaint must make a clear, definite and substantial reference to the document[ ]." *Id.* at 275-76 (citations omitted). Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Holowecki v. Federal Exp. Corp.,* 440 F.3d 558, 565-66 (2d Cir. 2006) ("When a plaintiff chooses not to attach to the complaint or incorporate a document upon which it solely relies and which is integral to the

complaint, the court may nevertheless take it into consideration in deciding the defendant's motion to dismiss, without converting the proceeding into one for summary judgment.") (internal quotation omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, [ ] matters of which judicial notice may be taken, or [ ] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."). Notably, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153.

### 2.    *Analysis*

Defendant D'Amico seeks dismissal of each of Plaintiff's claims against him. First, D'Amico argues that Plaintiff has failed to state a claim for breach of contract against him, because he was not a party to the Reseller Agreement and his name is not mentioned in the allegations in the Complaint relating to this cause of action. Second, D'Amico contends that the allegations supporting Plaintiff's fraud claims are conclusory and insufficient to satisfy the pleading requirements under Fed. R. Civ. P. 9(b). Last, D'Amico asserts that Plaintiff's unjust enrichment claim should be dismissed because there is a contract governing the subject matter of this dispute, and because the Complaint fails to specifically allege that D'Amico is in possession of any unpaid-for goods or any proceeds from the sale of those goods.

Defendant ESI, LLC seeks dismissal of all claims against it, while Defendant EDP seeks dismissal of Plaintiff's fraud and unjust enrichment claims only. ESI, LLC argues that it is entitled to dismissal of the breach of contract claim because it is not a party to the Reseller Agreement. ESI, LLC also argues that Plaintiff has not made alter ego allegations regarding its

relationship with EDP, the party to the Reseller Agreement, sufficient to overcome the presumption of corporate separateness. Both EDP and ESI, LLC make arguments similar to those made by D'Amico with respect to Plaintiff's fraud claims. As to Plaintiff's unjust enrichment claim, EDP and ESI, LLC contend that this claim fails because such claims cannot be entertained where a valid contract governs the subject matter. Since Defendants make similar arguments in their respective motions to dismiss, the Court will consider them together.

### a. Breach of Contract

In this diversity action, the Court applies New York's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In New York, "[a]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000). Neither party has alleged fraud or violation of public policy. Xiotech alleges that it is a Minnesota corporation, which Defendants do not dispute. Accordingly, the Court will enforce the parties' agreement to have interpretation of the Reseller Agreement governed by Minnesota law.

To recover on a breach of contract claim under Minnesota law, [a plaintiff] must prove: (1) the formation of a contract; (2) the performance of conditions precedent; and (3) the breach of the contract. *Tarek ibn Ziyad Acad. v. Islamic Relief USA,* 794 F. Supp. 2d 1044, 1058 (D. Minn. 2011) (citing *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008)). There is no dispute that a valid contract exists and that there was a breach of that contract. Rather, Defendants D'Amico and ESI, LLC seek dismissal on the basis that they are not parties to the Reseller Agreement. As noted above, since the Reseller Agreement

was incorporated by reference into the Complaint, the Court may consider it in deciding this motion to dismiss.

There can be no dispute that Defendant D'Amico was not a party to the Reseller Agreement. Xiotech does not allege that D'Amico was a party to the Reseller Agreement, nor does D'Amico's name appear on the face of the Reseller Agreement. Notwithstanding this fact, Xiotech argues that it would be premature to conclude that D'Amico cannot bear personal responsibility for the breach of contact, because he "may be personally liable because of his abuse of his roles as owner and officer of [EDP] and ESI, LLC." Dkt. No. 27. In support of this assertion, Xiotech contends that D'Amico dominated the corporate defendants and directed the movement of cash between them.

Ordinarily, a non-party to a contract cannot be bound by the contract. *See Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985). However, under New York law [5] a plaintiff may state a claim for breach of contract against a non-signatory where the plaintiff adequately alleges that the non-signatory was the "alter ego" of one or more of the signatories to the contract. *See Kaliner v. Mt. Vernon Monetary Mgmt. Corp.*, No. 07 Civ. 4643(LMM), 2008 WL 4127767, *2 (S.D.N.Y. Sept. 3, 2008). The doctrine of alter ego or "piercing the corporate veil" liability permits the owner of a corporation or a corporate affiliate, under certain limited circumstances, to be held liable for the corporation's obligations. *See, e.g., Morris v. N.Y.S. Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140-41 (1993); *accord Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) ("The doctrine . . . is invoked 'to prevent

---

[5] Under New York's choice of law rules, the law of the state in which a corporation is incorporated governs attempts to pierce the corporate veil. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Both EDP and ESI, LLC are alleged to be New York corporations, which Defendants do not dispute.

fraud or to achieve equity.'") (quoting *Int'l Aircraft Trading Co. v. Mfrs. Trust Co.*, 297 N.Y. 285, 292 (1948)).

In order to pierce the corporate veil, a party must establish that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004); *see also*, *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1052 (2d Cir. 1997).

New York courts consider the following factors in deciding whether the requisite domination is present:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*JSC Foreign*, 306 F. Supp. 2d at 486 (quoting *Wm. Passalacaua Builders*, 933 F.2d at 139).

In addition, a court will pierce the corporate veil only when a "fraud or wrong" has been committed. *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d at 134 n.2 (citing *Morris*, 82 N.Y.2d at 141 ("[T]he New York Court of Appeals held that a conjunctive test was applicable and required a showing of both domination and fraud or wrong to justify the piercing of a corporate

veil.")); *EEP Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005). However, proof of the five elements of common law fraud is not required to satisfy the "fraud or wrong" requirement. *See Rotella v. Derner*, 283 A.D.2d 1026, 1027 (4th Dept. 2001) (quoting *Lederer v. King*, 214 A.D.2d 354, 354 (1st Dept. 1995) ("A plaintiff is 'not required to plead or prove actual fraud in order to pierce the corporate defendant's corporate veil, but [must prove] only that the individual defendant's control of the corporate defendant was used to perpetrate a wrongful or unjust act toward plaintiff.'")).

Xiotech alleges that D'Amico owned a controlling interest in EDP and ESI, LLC and served as chief executive officer. Xiotech also alleges that ESI, LLC is the alter ego of EDP. Xiotech does not, however, allege that D'Amico controlled and dominated the corporate defendants, orchestrated cash flow between them, or that they had no independent existence. "Allegations of 'shared common ownership' and 'senior management responsibility' do not reach th[e] requisite threshold." *Phys. Mut. Ins. Co. v. Greystone Serv. Corp., Inc.*, 2009 WL 855648, *4 (S.D.N.Y. Mar. 25, 2009). Nor does the Complaint make reference to the other factors commonly considered by courts in determining whether to impose liability under an alter ego theory, such as the absence of formalities in corporate decision-making or inadequate capitalization. Notably, Xiotech does not even allege that D'Amico is liable to Xiotech for breach of contract.

Even assuming that Xiotech had adequately alleged domination and control, the allegations within the four corners of the Complaint are insufficient to give rise to a plausible claim that D'Amico used the corporate form to perpetrate a fraud or other tort. Although Xiotech alleges that the corporate defendants breached the Reseller Agreement, there are no allegations that D'Amico used the corporate form to breach the contract or frustrate contractual obligations.

Mere use of the corporate form to avoid personal liability is not improper. *See Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir.1979). While Xiotech argues that D'Amico transferred corporate assets without consideration to render the corporate defendants unable to perform their contractual obligations owed to Xiotech, these allegations are not in the Complaint.

Faced with this deficiency, Xiotech invites the Court to consider certain documents outside the four corners or the Complaint – client declarations, purchase orders, invoices, bank records, and correspondence – that it claims bolster its allegations sufficient to survive a motion to dismiss. The Court will consider the Reseller Agreement in disposition of the motions to dismiss since it is indisputably incorporated by reference into the Complaint. However, the Court exercises its sound discretion and declines to consider these additional documents.

Although Xiotech's request to replead is made only in a footnote, which the Court may properly disregard,[6] the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Nonetheless, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). Thus, "a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." *Perri v. Bloomberg*, No. 11–CV–2646, 2012

---

[6] *See Jacoby & Meyers, LLP v. The Presiding Justices of the First, Second, Third, and Fourth Depts., App. Div. of the Sup. Ct. of the State of New York*, 847 F. Supp. 2d 590, 594 n.26 (S.D.N.Y. 2012) (citing *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998)).

WL 3307013,*4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)).

It is clear that permitting amendment at this stage of the litigation would not be futile. The defects with respect to Xiotech's alter ego allegations can easily be remedied by pleading more specific facts in support of that theory. *See Badian v. Elliott*, 165 Fed. Appx. 886, 889-90 (2d Cir. 2006). Thus, the Court will allow Xiotech an opportunity to amend the Complaint with respect to this claim. Accordingly, Xiotech's breach of contract claim as to Defendant D'Amico is dismissed with leave to replead.[7]

As to Defendant ESI, LLC, it is by no means clear at this stage of the litigation that it was not a party to the Reseller Agreement. The Reseller Agreement is signed by David Taurisano on behalf of "Express Systems Integration." This ambiguous reference could correspond to either ESI, LLC or EDP, both of which Xiotech alleges operated under the "Express Systems Integration" trade name. Moreover, Xiotech alleges in its Complaint that "ESI," which is defined collectively as both EDP and ESI, LLC, entered into the Reseller Agreement and breached the same. Xiotech further alleges that "ESI" is liable for that breach. Thus, at this stage of the litigation, Xiotech has adequately pled a breach of contract claim against ESI, LLC. Accordingly, ESI, LLC's motion to dismiss Xiotech's breach of contract claim against it is denied.

### b. Fraud

As noted above, the Court applies New York's choice of law rules in this diversity action. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "[U]nder New York law . . . tort claims are outside the scope of contractual choice-of-law provisions that specify what law

---

[7] To the extent Xiotech intends to pursue an alter ego theory as between EDP and ESI, LLC, it may also amend its complaint to add new allegations in support of this theory.

governs construction of the terms of the contract." *Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 335 (2d Cir. 2005); *see also Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) ("While a choice-of-law provision is effective as to breach of contract claims, it does not apply to fraud claims, which sound in tort.").  Applying New York's choice-of-law analysis for tort claims, the Court must consider whether an actual conflict exists between the state laws that are implicated here.  *Finance One*, 414 F.3d at 331 (citing *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)).  If such a conflict exists, the Court must apply the law of the state with the greatest interest in the litigation.  *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006).  The parties appear to agree that there is no conflict between Minnesota and New York law with respect to fraud claims for the purposes of this motion to dismiss.  *Cf. Thrivent Fin. for Lutherans v. Countrywide Fin. Corp.*, No. 2:11-cv-07154-MRP-MAN, 2012 WL 17990258 (C.D. Cal. 2012) (finding New York and Minnesota fraud claims to be substantively identical).  Since there is no conflict, the Court will apply New York law.  *See Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference, . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").

"To prove fraud under New York law, 'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud plaintiff thereby, (3) the plaintiff intentionally relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir.1996) (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)).

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, because the court "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations,' . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal citation omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted).

The Complaint contains the following allegations in support of Plaintiff 's fraud claims:

> Defendants induced Plaintiff to supply the goods at issue here with false representations of Defendants' ability and intention to pay for them.

> During April and May 2013 ESI delivered Purchase Orders numbered 73862, 73870, 73921, 73932, 73933, 73952, 73989 to Xiotech for delivery of the goods stated therein; said Purchase Orders are referred to herein as the "Fraudulent Purchase Orders."

Defendants did not represent to Xiotech that ESI was insolvent until after ESI had received all of the Xiotech goods that ESI contracted to purchase with the Fraudulent Purchase Orders.

Defendants did not represent to Xiotech that ESI was at any significant risk of insolvency until after ESI had received all of the Xiotech goods that ESI contracted to purchase with the Fraudulent Purchase Orders.

Defendants did not previously give any indication to Xiotech by any means that ESI was unwilling or unable to provide timely payment in full for the goods ordered in the Fraudulent Purchase Orders, or was at all likely to be in such circumstances.

Upon information and belief, Defendants knew that ESI would be unable to pay Xiotech for the goods that are reflected in the Unpaid Invoices at the time ESI delivered the Fraudulent Purchase Orders to Xiotech.

Upon information and belief, Defendants knew that ESI did not intend to pay Xiotech for the goods that are reflected in the Unpaid Invoices at the time ESI delivered the Fraudulent Purchase Orders to Xiotech, regardless of its actual ability to pay.

Upon information and belief, ESI placed orders for Xiotech goods despite a known inability of ESI to pay for them so that ESI could net hundreds of thousands of dollars by reselling the Xiotech products without paying Xiotech for them.

Upon information and belief, D'Amico caused ESI to place orders for Xiotech goods despite a known inability of ESI to pay for them so that ESI could net hundreds of thousands of dollars by reselling the Xiotech products without paying Xiotech for them.

Upon information and belief, D'Amico and ESI affirmatively misrepresented the financial condition of ESI at and about the time it delivered the Fraudulent Purchase Orders, in order to induce Xiotech to deliver goods in response to them.

Upon information and belief, D'Amico and ESI intentionally withheld material information regarding the financial condition of ESI from Xiotech at and about the time it delivered the Fraudulent Purchase Orders, in order to induce Xiotech to deliver goods in response to them.

> Upon information and belief, D'Amico enriched himself personally by causing ESI to conduct itself in such manner.
>
> Upon information and belief, D'Amico acted contrary to the interests of ESI in order to enriched [sic] himself personally by causing ESI to conduct itself in such manner.

Compl. ¶¶ 1, 21, 34-44.

Xiotech further alleges that D'Amico made false representations that included affirmative misstatements and omissions of material fact and further, that, "D'Amico knew that his representations to Xiotech regarding ESI's intention to pay for the goods ordered in the Fraudulent Purchase Orders were false." *Id*. ¶¶ 58-59, 65. Xiotech also claims that it reasonably relied on Defendants' misrepresentations, and that it suffered pecuniary damages as a result of its reliance. *Id.* ¶¶ 69-70.

As noted in the Court's prior decision with respect to Plaintiff's motion for a preliminary injunction, these allegations fail to meet the heightened pleading standard for fraud. Although the Complaint contains some allegations regarding Defendants' non-payment and representations regarding insolvency, it does not contain any particularity regarding the circumstances constituting fraud. The Complaint is almost entirely devoid of allegations regarding "(1) the details of the time and place of the alleged misrepresentation; (2) the identity of the speaker; and (3) the content of the misrepresentations." *Nichols v. BAC Home Loans Servicing L.P.*, No. 1:13–CV–00224, 2013 WL 5723072, *8 (N.D.N.Y. Oct. 18, 2013). In addition, allegations that are based upon "information and belief" fail to meet the standard of Rule 9(b). *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247-48 (2d Cir. 1987). Moreover, to the extent Xiotech alleges that each defendant was involved in the fraud, the complaint must set forth allegations specifically attributable to each individual defendant. *See SEC v. Lee*, 720 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (where multiple defendants are involved, a plaintiff "must plead

circumstances providing a factual basis for scienter . . . for each defendant, guilt by association is impermissible").

Plaintiff has also failed to sufficiently plead the fraud claim to distinguish that cause of action from the breach of contract claim. Where a plaintiff pleads both a fraud claim and a breach of contract claim, the plaintiff must distinguish the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages. *Bridgestone/Firestone*, 98 F.3d at 19 (citing *Banque Arabe*, 57 F.3d at 153). Allegations that are "merely a restatement, albeit in slightly different language, of the [ ] contractual obligations asserted in the cause of action for breach of contract does not transform the claim into a tort claim." *Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 390 (1987) (citing *Deerfield Commc'ns Corp. v. Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954 (1986) (fraud claim held to be dressed-up version of contract cause of action)).

Plaintiff alleges that Defendants fraudulently induced it into shipping product pursuant to the Reseller Agreement, which Defendants did not pay for. Plaintiff has not alleged a legal duty separate from the duty to perform under the Reseller Agreement. Nor does Plaintiff allege any misrepresentations that were "collateral" or "extraneous" to the contract in dispute. Rather, the alleged misrepresentations relate directly to the terms of the Reseller Agreement. Plaintiff's conclusory allegations demonstrate nothing more than Defendants' intention not to abide by the terms of the Reseller Agreement, and are therefore insufficient to support a fraud claim. *See Bridgestone/Firestone, Inc.*, 98 F.3d at 19-20; *Non-Linear Trading Co., Inc. v. Braddis Assoc., Inc.*, 675 N.Y.S.2d 5, 13 (1st Dept. 1998) (citations omitted); *see also Sudal v. Computer*

*Outsourcing Serv.*, 868 F. Supp. 59, 60 (S.D.N.Y. 1994) ("A long line of New York courts . . . have held that where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.").  Plaintiff has also failed to allege special damages arising from the purported fraud, which would not be recoverable under a breach of contract theory.  Indeed, Plaintiff's fraud and breach of contract claims seek precisely the same damages.  *See Factory Associates & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC*, No. 05-CV-837 2007 WL 1834599, *7 (N.D.N.Y. June 26, 2007) ("no fraud claim exists because the claim is no different than Plaintiff's breach of contract claims . . . and seeks the same damages ").  In sum, alleging post-contract misrepresentations pertaining to Defendants' concealment of its breach of contract is insufficient to transform an otherwise garden variety contract claim into a claim sounding in fraud.  *See e.g.*, *John Paul Mitchell Systems v. Quality King Distributors, Inc.*, 2001 WL 910405, *5 (S.D.N.Y. Aug. 13, 2001); *Beeland Interests, Inc. v. Armstrong*, 2000 WL 1372999, *5 (S.D.N.Y. Sept. 22, 2000); *Ikea North American Services, Inc. v. Northeast Graphics, Inc.*, 56 F. Supp. 2d 340, 342-43 (S.D.N.Y. 1999).  Accordingly, Xiotech's fraud claim is dismissed with prejudice.

### c.      *Unjust Enrichment*

Although the Reseller Agreement is controlled by Minnesota law, "unjust enrichment is an equitable claim that is outside the scope of the contract's choice-of-law provision and may be governed by the law of a different state."  *Gross Fdn., Inc. v. Goldner*, No. 12 Civ. 1496, 2012 WL 6021441, *11 (E.D.N.Y. Dec. 4, 2012) (citing *Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 114 (E.D.N.Y. 2009)).  As noted above, "[c]hoice of law does not matter . . .

unless the laws of competing jurisdictions are actually in conflict." *IBM*, 363 F.3d at 143. As the parties appear to concede, common law unjust enrichment claims in New York and Minnesota are substantively similar. *See Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 20 (D. Mass.). Thus, "[b]ecause plaintiff's equitable claims, like its fraud claims, are outside the scope of the [Reseller] Agreement's choice-of-law provision, New York law applies." *Icebox-Scoops*, 676 F. Supp. 2d at 114.

All Defendants argue that Plaintiff cannot maintain a claim for unjust enrichment because there is a valid a contract governing the same subject matter. Defendant D'Amico separately argues that the Complaint fails to state a claim for unjust enrichment against him because there are no allegations that D'Amico is in possession of any goods or personally received any goods.

To assert a viable claim for unjust enrichment under New York law, a claimant must allege facts establishing: "(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations omitted). Under New York law, there can be no cause of action for unjust enrichment when there is a valid contract governing the same subject matter between the parties. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (1987). "[T]he existence of a valid and binding contract governing the subject matter at issue in a particular case does act to preclude a claim for unjust enrichment even against a third party non-signatory to the agreement." *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09 Civ. 4664, 2010 WL 3529237, *7 (S.D.N.Y. Aug. 24, 2010) (quoting *Law Debenture v. Maverick Tube Corp.*, No. 06 Civ. 14320, 2008 WL 4615896,*12 (S.D.N.Y. Oct. 15, 2008) (collecting cases)). "Courts have permitted pleading in the alternative in the face of a written agreement, however, when there is a

dispute as to the agreement's validity or enforceability." *Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195 (S.D.N.Y. 2009) (citations omitted).

There is no dispute here as to the existence of a valid contract governing this dispute. As discussed below, Xiotech seeks summary judgment on EDP's liability for breach of the Reseller Agreement, which Defendants do not oppose. Since the Court has determined, for the reasons set forth below, that a valid contract existed and that Xiotech is entitled to summary judgment on its claim for breach of that contract, the unjust enrichment claims cannot be maintained. *See Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Accordingly, Defendants' respective motions to dismiss Plaintiff's unjust enrichment claims are granted.

## B.     Plaintiff's motion for partial summary judgment

### 1.     *Legal Standard*

A court may grant a motion for summary judgment only if it "determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Federal Rule of Civil Procedure 56 provides that, if a non-moving party fails to oppose a summary judgment motion, then "summary judgment, *if appropriate,* shall be entered against the adverse party."  Fed. R. Civ. P. 56(e)(2) (emphasis added).  The Second Circuit has made clear, however, that where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial[,]" *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir. 2001), and that he is entitled to judgment as a matter of law, *see Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir. 1996) (quoting Fed. R. Civ. P. 56(c)).

Moreover, in determining whether the moving party has met its burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  Rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

### 2.    *Analysis*

Xiotech has moved for partial summary judgment on its breach of contract claim against EDP.  In support of its motion, Xiotech submitted a statement of material facts pursuant to Local Rule 7.1(a)(3).  EDP has submitted a responsive statement, in which it states that it does not oppose Xiotech's motion.  Under the Local Rules, the facts set forth by the moving party's statement "shall be deemed admitted unless specifically controverted by the opposing party."  L.R. 7.1(a)(3).  However, the Second Circuit has noted that "[r]eliance on a party's statement of undisputed facts may not be warranted where those facts are unsupported by the record."  *N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs.*, 426 F.3d 640, 649 (2d Cir. 2005).  The Court has reviewed Xiotech's Rule 7.1 statement and finds that the facts set forth therein are supported by the record.  Therefore, those facts are deemed admitted for purposes of deciding whether summary judgment should be granted.

As noted above, to recover on a breach of contract claim under Minnesota law, a plaintiff must prove: (1) the formation of a contract; (2) the performance of conditions precedent; and (3) the breach of the contract.  *Tarek ibn Ziyad Acad. v. Islamic Relief USA,* 794 F. Supp. 2d 1044, 1058 (D. Minn. 2011) (citing *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008)).  Xiotech has adduced facts, which EDP does not dispute, demonstrating that the Reseller Agreement is a valid contract; that Xiotech performed its obligations under the Reseller Agreement by shipping the ordered goods; and that EDP breached the Reseller Agreement by failing to pay for those goods.  The evidence in the record thus establishes that there is no material issue of fact with respect to any of the elements of Xiotech's breach of contract claim against EDP.  Accordingly, Xiotech is entitled to summary judgment on this claim, and an award of $551,167.77, excluding late fees and costs.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant D'Amico's motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that Defendants Express Data Products Corporation's and ESI, LLC's motion to dismiss is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Xiotech's breach of contract claim as to Defendant D'Amico is **DISMISSED without prejudice**; and the Court further

**ORDERS** that Xiotech shall file and serve any amended complaint within twenty-one days of the date of this Order in accordance with the Local Rules; and the Court further

**ORDERS** that Xiotech's fraud claims are **DISMISSED with prejudice**; and the Court further

**ORDERS** that Xiotech's unjust enrichment claims are **DISMISSED with prejudice**; and the Court further

**ORDERS** that Xiotech's motion for summary judgment is **GRANTED** in the amount of $551,167.77; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 3, 2014
      Albany, New York

```
Mae A. D'Agostino
U.S. District Judge
```